Good morning, my name is Rebecca Armstrong and I represent the Correctional Defendants in this matter. I'd like to reserve three minutes for rebuttal, please. Windfall. If the District Court's fee award is not vacated, it will result in a windfall to King Hall. This Court, using its de novo review, should vacate the fee award for three reasons. First, the District Court, as well as the appellees, completely failed to consider in their analysis that the Prison Litigation Reform Act prohibits a fee award in this case. The second reason the fee award should be vacated is that the District Court erred in finding that the 2006 remand order qualified Mr. Kimbrough as a prevailing party because he never received any enforceable court-ordered relief. In the last So why did you settle the case with him and gave him what he was seeking? Your Honor, during the course of this litigation, which has been going on since 1998, the original grooming regulations that permitted the original, that permitted CDCR to take away his credits changed in 2006 for matters completely unrelated to this case. So because in 2006, two months before Mr. Kimbrough filed his appeal, the regulations changed. CDCR was required, since the regulations had changed, to restore his credits and recalculate his discharge date. So the remand order was simply the procedural Well, it seems to me you sort of pulled the rug out from under him in order not to have yourself on the hook for a fee. And I mean, I can't – I'm not too sure, I'm not sure one way or the other, whether or not this would have been done if the suit hadn't been filed. Well, Your Honor, if you follow the factual circumstances of this case, because the regulations had changed in 2006, there was actually a modification order that was issued by CDCR, which is set forth by evidence in the record, that required CDCR to restore the credits and expunge the rule violation report, which was the equitable relief that Mr. Kimbrough sought. So it's not that we pulled the rug out at all. It was that CDCR was, due to facts unrelated to this litigation, required to restore those – those equitable relief that he sought. Well, why didn't you do it? We did. After he filed suit. No, Your Honor. It simply was fortuitously timed with the fact that litigation had been proceeding since 1998, when the former grooming regulations were valid. And CDCR appropriately during that time – Well, I should tell you, when the regulations were changed, why didn't you make that administrative change immediately? We did, Your Honor. It just took a matter of months in order to provide Mr. Kimbrough with that relief. Well, is it just coincidental that he had a lawsuit, not your position? Absolutely. Well, maybe do we have to accept that as a coincidence? I guess the question should be. Your Honor, if you look actually at the procedural history of this case, it is very determined. And although no constitutional violation under RLUIPA was ever found of the grooming regulations, there was a substantial burden. Thereafter is when CDCR altered or amended their grooming regulations to remove that 3-inch restriction. And it was thereafter, so approximately six months after the war soldier case was determined, that CDCR amended their grooming regulations to negate that 3-inch restriction. And simply, Mr. Kimbrough's case has been going on since 1998. And in January 2006 is when the regulations were changed. And you can see in the record that immediately I began handling this case in February. Mr. Kimbrough filed his notice of appeal two months after the regulations had changed. So it simply is a coincidental or a fortuitously timed circumstance that CDCR was required to act as we did in restoring his credits and recalculating his discharge date. At what point were the attorneys appointed? Now, this is what is very interesting in this case, is that the attorneys were appointed in 2004. Mr. Kimbrough, as a pro se, began litigating this case in 1998. So the work that King Hall is seeking to be the basis of their fee award was for work that was done years after litigation commenced. And as set forth in my briefing, none of the fees, there was no basis for that fee award that satisfies the requirements of the PLRA because they took no actions that demonstrated an actual violation or in receiving court-ordered, judicially enforceable relief, which is what is required by the statutory authority and Ninth Circuit precedent. Now, where do we, where does this order signed by Judge Garcia on September 14, 2001, which grants the plaintiff's motion for preliminary injunction, where does that fit into this history? So originally, as a pro se, Mr. Kimbrough, July 5th of 2000, received his first preliminary injunction, again, as a pro se. Just as a reminder, King Hall was appointed in 2004. So when Mr. Kimbrough received his first preliminary injunction, it was subsequently extended, I believe, three times. And so I believe Mr. Garcia's ruling was one of those subsequent. Judge Garcia. Judge Garcia, pardon me, was one of those renewals. Was what? Was one of the renewals of the preliminary injunction. But your point from a standpoint of law is this was pre-private counsel. Well, the basis that the district court found the award of fees to be justified was predicated on a 2006 remand order. So the 2001 Garcia order, to my knowledge, I'm sorry, pardon me. Judge Garcia's order has no relevance in regard to the specific award of fees that is at issue. You're suggesting we should be looking at the 2006 order. Yes. That is the basis that the district court used. Is that the one that was dismissed for lack of jurisdiction? That's exactly correct, Your Honor. No. The remand order in 2006 is what the defendants sought and was unopposed because of the fortuitously time change in regulations. And it's that remand order which was merely a procedural vehicle. It included no affirmative declaration of right. It was not a judicially enforceable order that provided Mr. Kimbrough with any relief on the merits. And it was based on that order that the district court indicated provided Mr. Kimbrough the opportunity to continue litigating. However, once it was remanded, it was then found to be moot, the case itself, because the equitable relief Mr. Kimbrough sought had already been provided by the defendants because of that fortuitously time change in regulations. Okay. There are two key bases for why the district court's award of fees should be vacated. First, as indicated, the July 5, 2000 injunction, which King Hall now asserts on appeal, is the first basis for the fee award. It is an illegally insufficient grounds for an award of fees for a couple of reasons. First, again, as the PLRA strictly requires and sets forth that no award of fees shall be issued unless an actual violation is proven and that the fees are proportionally related to the obtaining court-ordered relief. And in this case, King Hall ---- Why is the voluntary restoration of good time credits qualified for that? I mean, if I were a prisoner, I think the most valuable thing I could get adjudicated for me or settled is good time credits. Why doesn't that qualify as a ---- that's a material change between myself and the State if you're sitting in jail? Your Honor, the focus on that statement is the voluntary change or the voluntary provision of equitable relief that we provided. And the Supreme Court in the 2005 decision in Buckhannon specifically negated the catalyst theory for fee recovery. And in Buckhannon, the actions are very similar where the State agency altered their and provided ---- essentially amended the controversial regulation. But that was specifically as a catalyst of that lawsuit. And here, the conclusion that Mr. Kimbrough is not a prevailing party is even stronger because CDCR acted for reasons unrelated to this matter. And specifically, there's a dissent in Buckhannon which uses specifically the PLRA and states that the PLRA specifically because it does set such a high statutory threshold for an award of fees in the dissent. And mind you, the dissent is who was a proponent for the catalyst theory for fee recovery. The dissent themselves specifically stated that the PLRA can never ---- the catalyst theory can never be a basis for a fee award under the PLRA because it does set such strict requirements for what is necessary to achieve a fee award under the PLRA. So even if we look at the 2001 order as granted relief, wasn't that relief obtained in a pro se status? Precisely. And that's, Your Honor, I believe what ---- well, the 2001 extended the July 5, 2000 preliminary injunction.  fees for work that Mr. Kimbrough did as a pro se three and a half years prior to their appointment as counsel. And that is the second basis for why the fee award must be vacated in this matter is that, again, going back, King Hall did no work that was directly to prove an actual violation as required by the PLRA or any work at all in which the plaintiff received enforceable court-ordered relief, which is what the Ninth Circuit precedent requires in order to be determined as a prevailing party. Kimbrough also asserts in their answering brief that their case is factually distinguished from the case of Siripong's, which requires that the final adjudication of whether an actual violation has been proven. And Kimbrough ---- Mr. Kimbrough asserts that his case is distinguished from Siripong's because he achieved more than mere judicial acknowledgment of his violation of rights. But the fundamental flaw to that argument is that he never received judicial acknowledgement because there was never any actual violation proven of his constitutional rights. Thus, the district court, as well as Mr. Kimbrough, completely fails to consider the threshold requirements of what is necessary under the PLRA for an award of fees. Roberts. Do you agree that if you didn't restore his good time credits, that would have been  That would have been ---- Suppose you didn't restore those good time ---- you acknowledge that that was something that he was entitled to as a matter of law? After 2006, when the regulations changed, yes. Okay. And that if you didn't do that, it would be he had a due process right, Fifth Amendment or Fourteenth Amendment, right to those good time credits. That is correct, after 2006. Okay. Well, then, it seems to me he got something of a constitutional value by prodding you to settle the case. Your Honor, I recognize that I'm running close to my three minutes. May I respond to this question? Of course. Your Honor, I, again, the focus has to be on the voluntary nature of the relief that was provided to Mr. Kimbrough. And, again, going back to the Buckhannon decision, the Court specifically stated that voluntary actions don't constitute as a material change of the legal relationship. In Carbonell, this Court, this circuit's specific case law on this requires that, as in Carbonell, the INS was restricted from doing something it had the legal right to do. That is the essence of what makes a material change in the legal relationship. Yes, as some judicial imprimatur. Precisely. And in this case, the remand order simply had no, it was not judicially sanctioned. As stated, there was never an enforceable right, and there was never any relief ordered. And, further, if you go to Citizens for Better Forestry, which is a recent decision in this case that came out in June of this year from this Court, which specifically sets forth merely procedural or jurisdictional is the language used in that case. Thank you, counsel. You're down to about a minute, so. Reserve the rest of the time. Thank you. Very well. We'll hear from the other side. DeSantis. Good morning, and may it please the Court. My name is Angelo DeSantis, and I represent the appellee, Mr. Clark Allen Kimbrough. The district court properly awarded attorney's fees for two reasons. First, the preliminary injunctions made Mr. Kimbrough a prevailing party. And, second, this Court's remand order of 2006 also made Mr. Kimbrough a prevailing party. Which preliminary injunction order are we talking about? What's the date of it? Your Honor, every single preliminary injunction made Mr. Kimbrough a prevailing party. The first preliminary injunction was issued by this Court in a by this Court? By this Court on July 5th, 2000, Your Honor. This Court also issued a preliminary injunction in its January 30th, 2001 order. And then, by my count, the district court ordered or issued a preliminary injunction five more times. Counsel, how can you distinguish Surypong's, which seems to say preliminary relief does not a prevailing party make, for PLRA? Your Honor, Surypong's involved a death row inmate who was executed, but he received a TRO before he was executed. And then in seeking attorney's fees, this Court held that he had not proved a violation of his rights. However, I believe that Surypong's is actually extremely helpful to Mr. Kimbrough on this point. The Court – this Court, in holding that Mr. Surypong's had not proved an actual violation of his rights, stated – and I will paraphrase slightly for clarity here, Your Honor – it said the Court never found that Surypong's rights were violated, nor did the government ever concede that Surypong's rights were violated, nor does the record below support an independent conclusion by this Court to that effect. That is the point is, though, in a preliminary injunction, you're determining whether there is a likelihood of success on the merit. There is no adjudication as to any concrete violation. Well, Your Honor, if I understood the discussion that just took place before me, I believe the government has conceded that, in fact, Mr. Kimbrough's rights were violated after the year 2006, based on a failure to assure. But what she said was if they had not restored the good time credits after the regulation was changed, his rights would have been violated. Your Honor, the regulation was changed in 2006. They restored Mr. Kimbrough's good time credits February 27, 2007. During that time, it was a violation of Mr. Kimbrough's constitutional rights. Even so, if the Court did not find a violation and enter an order to that effect, how is Mr. Kimbrough a prevailing party under the strict provisions of the PLRA? Well, Your Honor, I would submit that the PLRA speaks to whether prisoner or governs how attorney's fees should be awarded to prisoners. But whether or not Mr. Kimbrough is a prevailing party is a separate issue, Your Honor. And here, both Mr. Kimbrough and the defendants agree that Mr. Kimbrough became a prevailing party based on the preliminary injunctions. And I believe this Court's holding it. I don't think a policy counsel agrees with that, and I'm not sure I agree with it either. Understood, Your Honor. I would point the Court to Defendant's opening brief, page 21, and the reply brief, page 5, where they note that it is undisputed that the prevailing party made Mr. Kimbrough a prevailing or, I'm sorry, the preliminary injunction made Mr. Kimbrough a prevailing party. Yeah, but doesn't there have to be a judicial sanctioning of someone of a change in legal status, and there's really no court order that changed any status here. Preliminary injunctions are don't change a thing. They just hold things up for a while. What the record can you point to that would constitute a judicial sanctioning of a change in legal status between yourself and your client and the government? Your Honor, the preliminary injunction changed the status of the court. No, it doesn't. It holds things. You know, we've all been in hundreds of preliminary injunctions, and sometimes you put them in, they come back, you know, or it just holds things up for a while. There's no status change whatsoever. It's not on the merits at all. I see your point, Your Honor. However, I have to say that there's no sanctioning here, but the preliminary injunctions that were related to you didn't change anything. They just put them off or deferred them for further proceedings. Well, Your Honor, I believe the preliminary injunction represented both a change of material alteration of the status. I believe the status quo at the time of the initial preliminary injunction was that a prisoner would be punished for having his hair cut or for refusing to cut his hair. The preliminary injunction changed the status in that it prevented the CDC from enforcing that regulation. You're asking us to overrule Seropon's, aren't you? Not at all, Your Honor. Not at all, Your Honor. And I think I'm asking this Court to follow the Watson v. Riverside case in holding that or which held that a preliminary injunction was sufficient to make a party, a prevailing party. But that was before Buchanan, wasn't it? I don't believe so, Your Honor. My recollection is it followed or came after Buchanan. Although I don't think it was after Buchanan, although I don't think it was after Buchanan. Well, while we're contemplating that, you're still relying on preliminary injunctions issued in 2001, is that right, or 2000 and then 2001, is that correct? And they were continued to issue after that, Your Honor, but yes. But during that period, he was unrepresented. That is correct, Your Honor. And, again, this was under the PLRA. So how can there be any attorneys' fees awarded whatsoever with respect to anything that happened, I mean, even assuming it qualified under the PLRA? Is there any theory under which attorneys' fees could be awarded? Absolutely, Your Honor. And to for work done after the period during which he represented himself, you better spell that out. Yes, Your Honor. I'll do my best to spell that out. And let me just state that, again, Mr. Kimbrough and defendants agree that a pro se litigant is not entitled to attorneys' fees, and certainly we're not seeking fees for any of the work that Mr. Kimbrough did, nor is the district court. But you're relying on the PIs that were entered long before he was represented by counsel. That's correct, Your Honor. How can that be? Your Honor, I believe the answer to your question is, is this conflict stems from the defendant's attempt to transform a prevailing party standard into a prevailing attorney standard. And I think what defendants are doing is not the law. I think the law is, if you look at the fee statute, section 1988, it says that a court may in its discretion award attorney's fees to the prevailing party. Now, defendants are trying to read that language as prevailing attorney, and I think that's incorrect, and I think that can be demonstrated by a few examples. If Mr. Kimbrough had been represented by an attorney when he received his preliminary injunction, and then afterwards there was a substitution of attorneys, and we were just considering the fees for work performed by his new counsel, we would have been able to do that. But there's a tweak on that, by the PLRA. That's been tweaked at 1988. That's right. Yes, Your Honor. The PLRA adds additional hurdles that the fees be incurred in proving a violation and also in enforcing the relief order. And I believe, again, both of those elements are met here in that, number one, But the attorney, yeah, but don't they contemplate an attorney's doing that? Your Honor, I think that here the work was done in proving a violation of Mr. Kimbrough's rights was done while he was represented by counsel here, although I'm not sure. Then how can you rely on the 2000 and 2001 orders? Your Honor, I believe that the proof of Mr. Kimbrough's violation of his rights, I believe that counsel admitted that after 2000, it was or 2006, it was a violation of Mr. Kimbrough's rights to not restore his good time credits, which they failed to do for another year and a half afterwards. And also, I believe that the fees were incurred in enforcing the relief order. And specifically, what I mean by that is Mr. Kimbrough's counsel enforced the preliminary injunction to its logical conclusion in that Mr. Kimbrough was no longer punished for refusing to cut his hair, and ultimately, at the end, all, nearly all of the relief that Mr. Kimbrough sought, he was restored. But I think that's what's your response to opposing counsel's representation that the change in the regulations was fortuitous? Your Honor, my answer to that is that, while it is true that in 2006, the grooming regulations were amended, now inmates can have their hair at any length, nothing in the regulation makes them retroactive. Similarly, nothing required them – nothing in the regulation requires them to go back and restore the good time credits of anyone punished under the old regulations. And certainly, I have not heard any suggestion that they did, in fact, go back and restore the good time credits of every single inmate who had been punished under their old regulation. So rather, I would suggest that the reason that they restored Mr. Kimbrough's good time credits was not pursuant to the regulation, but it was because, in fact, a failure to restore his good time credits was a violation. But even so, if it's voluntary conduct, then how can that make him a prevailing party? Your Honor, again, I would suggest that here both Mr. Kimbrough and the Defendants agree that Mr. Kimbrough was a prevailing party, and they make that concession in both their open and private. If they agreed, we wouldn't be here. If they agreed that he was a prevailing party, the challenge to the attorney's fees would not exist. Your Honor, I believe that what they're attempting to do is transform this into a prevailing attorney standard. They're saying that Mr. – essentially, they're arguing that Mr. Kimbrough became a prevailing party based on his preliminary injunction, and then when he obtained counsel, that prevailing party status disappeared. Well, you don't argue that he was entitled to fees when he was pro se. No, a pro se ligand is definitely not entitled to fees, Your Honor. I would suggest that this case is very analogous to Watson v. Riverside, where the plaintiff received a preliminary injunction. Which was not a PLRA case, by the way. I was on that panel. It's not a PLRA case, so it's a little different rubric. Absolutely, Your Honor. And I believe the additional hurdle set by the PLRA is proving a violation of rights and that the fees be incurred in enforcing. But I believe also those two elements have been met. But this case being analogous to Watson v. Riverside, where in Watson, the plaintiff's police officer received a preliminary injunction. There was affirmative relief, though. That was a – I mean, the judge actually made an affirmative finding. I'm remembering this case now. The judge made an affirmative finding whether or not certain evidence could be admitted in a disciplinary case against Mr. Watson. So there was some judicial involvement in the decision that was made there. Instead of just maintaining the status quo, the judge actually entered the fray and made a decision in favor of Mr. Watson. Yes, Your Honor. And I believe that the preliminary injunction here is still analogous. But the point in Watson that I think is particularly relevant here is that in this Court's decision in Watson, we were considering whether the district court properly awarded attorneys' fees for work performed after the preliminary injunction. And I would suggest that even if Watson had had a substitution of counsel many times in the middle of it, we would still – we wouldn't say that a change in counsel or any other sort of – the fact that he gained counsel or perhaps even if he was pro – I would suggest even if he was pro se when he received his preliminary injunction, in considering the fees for work performed after the preliminary injunction, I think we should follow what this Court said in Watson, which was that it was proper – or the district court acted properly in awarding fees for work performed by counsel after the preliminary injunction because the claims litigated by his new counsel, they arose out of the same conduct as the preliminary injunction, and also because all of the claims were substantially related. And I believe here, too, the claims that were litigated by Mr. Kimbrough's counsel arose out of the same conduct that the preliminary injunction arose out of. Specifically, the preliminary injunction and the restoration of the 30 days' good time credits, all of those arose from the CDC's conduct of punishing Mr. Kimbrough for refusing to cut his hair. Moreover, these two claims are substantially related in that the preliminary injunction prevented the CDC from continuing to punish Mr. Kimbrough for refusing to cut his hair and the 30 days of good time credits. Ginsburg. But the problem is you have a case that specifically involves the PLRA, and you're trying to analogize to a case that doesn't involve the PLRA. I see that as a hurdle for you. Your Honor, no doubt the PLRA is a hurdle for us, Your Honor. However, I do believe that the PLRA simply sets two additional standards for us, that the fees be incurred in proving a violation and that the fees be incurred in enforcing the relief ordered. And I believe both of those elements have been met. Once again, Mr. Kimbrough's rights were, in fact, violated, as counsel, as defendants have conceded, after 2006, and also the fees were incurred in enforcing the relief ordered, specifically the relief. Counsel, I have a question with respect to the fees. What is the range of fees per hour, the hourly rate that is in this case? I believe under the PLRA cuts our limits down to, I think, 150 percent of the standard rate. Right. But so what the summary is, what was the range? Was the high end something about 125 per hour? I believe the high end was 169, if I'm not mistaken. 169 was the top rate. Yes, Your Honor. And the lower end were in the 70s? Some of the students were in the 70s, Your Honor. All right. So the range went from $70 an hour to $169 an hour. I believe that is correct, Your Honor. That's consistent with my recollection, but I wasn't quite sure of the detail. Isn't there a problem of double counting with respect to the $2,428 item? That is correct, Your Honor. We brought that to the Court's attention, and certainly it is a problem of double counting there. We simply suggest that, I mean, this Court can affirm a district court on the basis of anything supported by the record. We had raised the issue of fees on fees as a possible means to support it. But, yes, that is definitely a problem. The costs were awarded twice, and that was not correct, Your Honor. Anything further? No, Your Honor. Thank you very much. Very well. We have a little reserve time. Thank you. Mr. Kimbrough and Kinghall assert that the PLRA is a separate issue. Rather, the state would contend that it is a threshold issue. Specifically, as stated, unless the PLRA requirements can be satisfied, no fees shall be awarded. Mr. DeSantis, and for Mr. Kimbrough, asserts that he was using language that was trying to substantially follow through with the success that the preliminary injunction, to any extent that the preliminary injunction may have provided with Mr. Kimbrough, there's a couple, two fundamental points that must be highlighted. First, as stated, when Mr. Kimbrough received the preliminary injunction, he was a pro se litigant. It is very clear in the case law that pro se litigants are not entitled to any fee award. Second, because Kinghall is asserting two bases, justifying the award of fees, and both, as I stated, are legally insufficient. And permitting this fee award to continue, or to be awarded, would actually result in a windfall for Kinghall. Simply stated, they cannot, nor have they, proven, as required by the PLRA, that Mr. Kimbrough ever had an actual violation. Simply, there is no order from any court that has ever found an actual violation, nor have the fees that they allege justify the award. None of the fees are, satisfy the PLRA requirements. Very well. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Cowen, O'scannlain, Rawlinson